**In the United States District Court
for the District of Kansas**

───────────

Case No. 22-cv-01239-TC-GEB

───────────

NORMAN MEANS,

*Plaintiff*

v.

GOODLAND REGIONAL MEDICAL CENTER,
CRAIG LOVELESS,

*Defendants*

───────────

**MEMORANDUM AND ORDER**

Craig Loveless, chief executive officer of Goodland Regional Medical Center (GRMC), terminated Norman Means. Means sued, alleging violations of Title VII, deprivation of a protected property interest, and wrongful termination. Doc. 1 at ¶¶ 24–33. Loveless, in his individual capacity, filed a motion to dismiss. Doc. 10. For the following reasons, Loveless's motion is denied.

**I**

**A**

To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

1

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

Dr. Norman Means is a former employee of GRMC, a Kansas county hospital located in Goodland. Doc. 1 at ¶ 1. Means contends that GRMC is a state actor because it is organized pursuant to K.S.A. § 19-4601 *et seq.*, which allows Kansas to assume responsibility for funding and managing specified county hospitals.[1] Doc. 1 at ¶ 2. Loveless is the CEO of GRMC. Doc. 1 at ¶ 4.

On July 1, 2020, Means began a three-year term employment contract with GRMC. Doc. 1 at ¶¶ 8–9. During his first year on the job, Means alleges that he took steps to bring GRMC into compliance with its legal obligations. *Id.* at ¶¶ 10–17. These steps included providing a

---

[1] Both GRMC and Loveless deny that they are state actors in their Answer. Doc. 8 at ¶ 2; see also Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295-98 (2001) (summarizing the murky line between actions attributable to the state and those that are not). But Loveless's motion to dismiss implicitly accepts the premise that his conduct constitutes action "under color of" state law and offers no argument to the contrary. See Doc. 11 at 5-6 (arguing the merits of the constitutional claim and claiming entitlement to qualified immunity as a state actor). As a result, this Memorandum and Order assumes, without deciding, that GRMC and Loveless have acted under color of Kansas law.

private space for female employees to breastfeed, reducing the inequitable workload produced by assigning female patients only to female providers as a matter of hospital policy, pointing out noncompliant opioid dispensing, and advocating against the hospital's adoption of an electronic records system whose maker was involved in a government fraud investigation. *Id.* at ¶¶ 10–17. When Means raised these issues, first with Kim Horinek, Director of Human Resources, and then with a senior doctor, Dr. Travis Daise, he was "chastised." *Id.* at ¶ 16. A few weeks later, Loveless fired him at a June 30, 2021 meeting. *Id.* at ¶ 18.

Means's complaint invokes 42 U.S.C. § 1983 to assert a cause of action against Loveless.[2] In it, Means alleges that the "actions of GRMC and Loveless constitute a deprivation of [his] property, rights, privileges, or immunities." Doc. 1 at ¶ 29. Invoking Rule 12(b)(6), Loveless asserts that the complaint fails to allege a deprivation of a clearly established constitutional right. Doc. 10 at 5-6.[3]

## II

Loveless does not establish that Means has failed to state a claim upon which relief may be granted. As a result, his motion to dismiss is denied.

### A

Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute.

---

[2] The complaint also asserted two other causes of action, Title VII discrimination and wrongful termination, against GRMC and Loveless. Means now agrees that neither are viable against Loveless. Doc. 17 at 1. As a result, those two claims are dismissed as against Loveless.

[3] Loveless filed his Answer moments before he filed his motion to dismiss. As a result, his motion to dismiss technically arises under Rule 12(c). *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1361 (4th ed. 2023). But the standard applicable to a Rule 12(b)(6) motion and a 12(c) motion is the same. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023). To state a viable Section 1983 claim, a plaintiff must establish that a person acting under color of state law caused him or her to be deprived of a right secured by the Constitution or laws of the United States. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48(1988)); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

Loveless seeks dismissal of the Section 1983 claim by invoking the doctrine of qualified immunity. Doc. 11 at 6. The analytical framework for qualified immunity at the Rule 12 stage is relatively straightforward. First, the facts as pled in the complaint must allege conduct that, assuming the allegations are true, violates the Constitution or laws of the United States. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Second, the law must have been clearly established at the time of the alleged conduct such that the defendant had fair notice that his or her conduct was unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). If both inquiries are answered in the affirmative, the motion to dismiss must be denied. But, if the answer to either is no, the defendant is entitled to judgment as a matter of law. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023). Courts have discretion to address the inquiries in any order, as courts must "think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *al-Kidd*, 563 U.S. at 735 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *accord Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

The qualified immunity analytical framework balances competing interests. Suits against government actors allow those wronged by government misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). But non-meritorious suits exact a high cost from society and government officials by unduly interfering with the discharge of official duties. *See id.*; *see also Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998). So, government officials performing discretionary duties are immune from suit so long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable official would have been aware of. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011). Whether an official is immune turns

on the objective reasonableness of the official's actions, considering the laws clearly established at the time the official acted. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Objective reasonableness is not an exacting standard; qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Discerning whether the relevant legal rule was clearly established is a narrow and context-specific exercise. *See Anderson*, 483 U.S. at 639; *White*, 580 U.S. at 79. The precise contours of the legal right must have been so clear that every reasonable official in that circumstance would have understood what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct. *See Mullenix v. Luna*, 577 U.S. 7, 13–14 (2015); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011); *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5-8 (2021) (reversing a denial of qualified immunity where the precedent relied upon had "materially distinguishable" facts such that it "did not give fair notice" to the official). Practically, this means a "Supreme Court or Tenth Circuit decision" must have held that the same conduct (or very nearly the same conduct) as the conduct at issue is a violation of law. *Wise v. Caffey*, 72 F.4th 1199, 1209 (10th Cir. 2023).[4] When it is debatable whether a violation has occurred in the circumstances at issue, the law cannot, by definition, be clearly established. *See Reichle*, 566 U.S. at 669–70; *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (reversing the Tenth Circuit for denying qualified immunity where the precedent did not make it clear to an officer that the specific conduct at issue was unlawful).

---

[4] The Supreme Court has never held that circuit precedent may be a dispositive source of clearly established law, opting instead to assume without deciding that it might. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citing *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 614 (2015), which cited *Carroll v. Carman*, 574 U.S. 13, 17 (2014), which, in turn, cited *Reichle v. Howards*, 566 U.S. at 665-66)); *see also Wilson v. Layne*, 526 U.S. 603, 617 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."). But the Tenth Circuit has, holding that a "constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017).

**B**

Loveless does not establish that Means's complaint fails to state a violation of a clearly established constitutional right. As a result, the motion to dismiss is denied.

**1.** Means alleges that his termination in violation of his term contract violated his Constitutional right to due process under the Fourteenth Amendment. Loveless's motion fails to identify a pleading deficiency.

Under the Fourteenth Amendment, "No State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Thus, Means's claim has two necessary elements: a protected property interest and government interference without appropriate process. *Citizen Center v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014); *accord Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).

Loveless does not meaningfully argue that Means has failed to show either element. Instead, Loveless claims Means did not specify what rights he claims were denied. Loveless speculates it might be a right not to be deprived of property without due process or it might be gender discrimination. Doc. 11 at 5 (recognizing that there are allegations that could be construed as a termination of a property right to continued employment, but surmising the real concern might be gender discrimination). His argument lacks merit: The complaint expressly asserts a due process claim by alleging that Means had a protected property right to continued employment as guaranteed by the contract and that he was terminated in violation of the contract.[5] Doc. 1 at ¶¶ 18, 27–29.

A Section 1983 plaintiff must also allege personal participation in the violation by identifying who did what to whom. Doc. 11 at 4 (referring to *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008)). The complaint does this: It alleges that "Loveless, acting for GRMC (and GRMC acting by and through Loveless) terminated the three-year contract of employment without cause." Doc. 1 at ¶ 18. And

---

[5] Loveless did not attack the substance of Means's claim. In other words, Loveless evidently accepts that the contract at issue created rights enforceable under the Constitution and that he provided no process before or after the deprivation even though Means did not allege the lack of any pre- or post-deprivation process. *See* Doc. 1 at ¶¶ 18–20, 27–30.

it alleges that Loveless firing Means before the end of his term contract "constitute[s] a deprivation of Means's property, rights, privileges, or immunities under color of state law . . . ." *Id.* at ¶ 29. That is sufficient to allege that Loveless engaged in the specified unlawful conduct. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (there must be "'an affirmative link' … between the constitutional deprivation and [] the supervisor's personal participation").

**2.** Loveless invokes qualified immunity but makes no meaningful argument that it protects him in these circumstances. His terse argument contends only that "it is readily evident on its face that Plaintiff's Complaint fails to articulate any conduct by Loveless aside from his mere presence as a corporate officer of GRMC that justifies inclusion as an individual defendant." Doc. 11 at 6. There are several defects to this argument. One is that this argument merely reformulates Loveless's personal participation argument. That argument lacks merit because Paragraphs 18 and 29 allege that Loveless personally engaged in the deprivation.

Another more significant shortcoming is that Loveless fails to argue that the law was insufficiently clear such that he did not and could not have appreciated that his conduct was unlawful. As noted, the whole point of qualified immunity is to provide breathing room to public officials called to act in situations—frequently tense and rapidly evolving—where the law provides no clear guidance. *See, e.g.*, *Ziglar v. Abbasi*, 582 U.S. 150-52 (2017). It may be that the factual backdrop is murky, the law is unsettled, or both. *See Saucier v. Katz*, 533 U.S. at 205 (2001), *rev'd on other grounds*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In such situations, no civil liability accrues to a government actor that has made a reasonable but mistaken judgment about what the law permits or requires. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

Loveless argues neither that the law was unclear nor that there was factual ambiguity in these circumstances. He simply invokes the doctrine by name and seeks judgment in his favor without making any factual or legal argument why it immunizes his conduct in these circumstances. As a result, he is not entitled to qualified immunity because it has long been held that a public employee's right to continued employment, if protected by rule or contract, cannot be deprived without appropriate process. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 539, 546–47 (1985) (finding terminated employees of public employer were deprived of property right in form of continued employment without observance of due process).

7

Loveless's reply brief argues for the first time that he is entitled to qualified immunity because firing Means was a discretionary choice, citing *Klaassen v. University of Kansas School of Medicine*, 84 F. Supp. 3d 1228, 1249–59 (D. Kan. 2015), to support his position. Doc. 18 at 4–5. That argument fails for at least three reasons.

First, a moving party cannot make new arguments for the first time in a reply brief. *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) (to consider an argument raised for the first time in a reply brief "would be manifestly unfair" to the opposing party who "has no opportunity for a written response"). As a result, Loveless's argument is improper and need not be considered.

Second, even if the argument were properly made, *Klaassen* undermines Loveless's position. In *Klaassen*, the district court denied qualified immunity on the plaintiff's procedural due process claim because the defendant conceded that the plaintiff had a protected property right in continued employment and held that the professor's right to a pretermination hearing was clearly established. *See* 84 F. Supp. 3d at 1258-59. That is what Means asserts here: Loveless fired Means even though he had a contractual right to continued employment. Doc. 1 at ¶¶ 18, 28, 29.

Third, the portion of the *Klaassen* opinion on which Loveless relies is inapposite because it concerns the substantive component of the Fourteenth Amendment, not the procedural protections at issue here. Doc. 18 at 4–5. The Fourteenth Amendment's due process clause has been construed to protect both procedural and substantive rights. *See generally County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Greene v. Barrett*, 174 F.3d 1136, 1140 n.1 (10th Cir. 1999). The former guarantees that no right will be deprived unless fair procedures are employed, typically notice and an opportunity to be heard. *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). The latter protects fundamental rights and liberties from deprivation regardless of the procedures used. *Washington v. Glucksburg*, 521 U.S. 702, 719-21 (1997). Means does not appear to complain about the deprivation of a fundamental right (i.e., is not raising a substantive due process claim). It is therefore unclear why *Klaassen*'s discussion of substantive due process would be helpful in this dispute.

## III

For the foregoing reasons, Loveless's Motion to Dismiss, Doc. 10, is denied as to the allegations in Count II. Count I and III to the extent made against Loveless are dismissed with prejudice.

IT IS SO ORDERED.


Date: November 20, 2023            s/ Toby Crouse
                                   Toby Crouse
                                   United States District Judge

9